IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY HARRIS

           :

           :

 v.         :  Civil Action No. DKC 20-0988

           :

THE DOW CHEMICAL COMPANY, et al.

           :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this toxic tort case are motions filed by Defendant The Dow Chemical Company ("Dow") and Defendant BP Lubricants USA, Inc. ("BP")[1] partially to dismiss Plaintiff's complaint (ECF Nos. 17, 20).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motions will be granted.  Plaintiff will be granted leave to amend his allegations seeking punitive damages.

**I. Background**

Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiff.  Plaintiff Jeffrey Harris worked for the Advanced

---

[1] Plaintiff alleges that BP also does business as "Castrol" and refers to it as such in its complaint.  (ECF No. 1, at 1) (explaining "[BP], d/b/a "Castrol . . . is the successor in liability to Castrol Heavy Duty Lubricants, Inc., and Castrol North America, Inc.").  BP argues that this is a mislabeling even though it was "formerly known as Castrol Industrial North America Inc." (ECF No. 19, at 1).

Development and Assembly Corporation ("ADA") in Silver Spring, Maryland, from 1991 to 1995. ADA was a manufacturer of "semi-conductors, or microchips," which required cleaning using a "vacuum degreaser." Mr. Harris was required to use a "vapor degreaser device" during his time at ADA.

Around May 15, 2017, Mr. Harris "was diagnosed with multiple myeloma, a blood-borne disease." On April 17, 2020, Mr. Harris filed this diversity action asserting claims for breach of warranty, strict product liability, and negligence against Defendants Dow and BP. He alleges that the tool with which he was required to work for years at ADA "utilized hazardous chemicals including benzene, toluene, trichloroethylene, and trichloroethane, and other dangerous and carcinogenic hydrocarbon-based substances and chemicals to produce and clean the products which his employer manufactured." He asserts that "these chemicals and substances were used in other functions" in the "ADA production areas where Plaintiff worked." In turn, "vapors, fumes and chemicals" exposed him to the aforementioned "cancer-causing chemicals." He asserts that his disease "may be caused by exposure" to these "dangerous chemicals," and asserts that the substances named in the complaint were "manufactured, sold, and supplied to ADA by the Defendants Dow[] and Castrol during all relevant periods of Plaintiff's employment there."

Mr. Harris seeks to hold the Defendants jointly and severally liable for compensatory damages in excess of $75,000 and punitive damages for "[Defendants'] willful and wanton disregard for the safety and welfare of plaintiff and his co-workers" in that they "showed a conscious indifference to the health and welfare of the people working with the manufacturer's products."[2]

On June 5, 2020, Dow moved to dismiss Count I for breach of warranty as time-barred and to dismiss the request for punitive damages in that it relies solely on "conclusory assertions" of "actual malice" and not the "specific allegations of fact" required. (ECF No. 17). On June 11, 2020, BP moved to dismiss Count I against it on the exact same grounds and with virtually identical arguments. (ECF No. 20). Mr. Harris filed his oppositions to Dow's motion to dismiss, (ECF No. 23), and to BP's motion to dismiss, (ECF No. 24), on June 25, 2020. On July 9, 2020, BP and Dow each filed its reply. (ECF Nos. 25 and 26).

## II.  Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*,

---

[2] Both motions to dismiss argue that the "[t]he Complaint does not specify under which counts Plaintiff seeks punitive damages," while noting that Maryland law does not allow for the recovery of punitive damages for breach of warranty. (ECF Nos. 17 and 20, at 1 n.1) (citing *Owens-Ill., Inc. V. Zenobia*, 325 Md. 420, 463 (1992)). However, the complaint places its prayer for punitive damages under Count II (Strict Products Liability). (ECF No. 1, ¶ 22).

464 F.3d 480, 483 (4th Cir. 2006).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.

## III. Analysis

### A.   Breach of Warranty

Defendants argue that that the purported breach of warranty claim in Count I is time-barred by the applicable statute of limitations which, under Maryland Commercial Law, "mandates that claims for breach of warranty must be brought within four years of tender of delivery."  (ECF Nos. 17-1 and 20-1, at 2) (citing Md.Code Ann., Com. Law § 2-725(1)(2020)).  As both Defendants

4

explain, Plaintiff alleges in his own complaint that he left work at ADA in 1995, which makes this the last year in which he was "allegedly exposed." Therefore, as both Defendants state, the "latest date for Plaintiff [properly] to file a claim of breach of warranty was in 1999."

The statute of limitations is an affirmative defense that must be raised and proven by a defendant. It may only be considered on a motion to dismiss if it plainly appears on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The facts recited above come directly from the complaint, and they are not challenged by Plaintiff in his response. Indeed, he did not even address the argument, which, as pointed out by Dow and BP should be viewed as an abandonment of Count I. (ECF Nos. 25 and 26, at 1). They are correct that failure to respond to an argument made in a dispositive motion may be fatal. *See Faller v. Faller*, No. DKC 09-0889, 2010 WL 3834874, at * 6 (D.Md. Sept. 28, 2010); *see also Ferdinand-Davenport v Child.'s Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010).

"For the purpose of limitations on implied warranties, the ordinary rule is that the four years begins to run when the goods are delivered." *Wash. Freightliner, Inc. v. Shantytown Pier, Inc.*, 719 A.2d 541, 551 (Md. 1998). In a recent similar case, Judge Gallagher wrote that:

> in Maryland, a plaintiff must file a claim for
> breach of warranty within four years of the
> tender of delivery of the product. Md. Code
> Ann., Com. Law § 2-725 (West 2019).  The
> discovery rule does not apply to breach of
> warranty claims. *See Mills v. Int'l Harvester
> Co.*, 554 F. Supp. 611, 612-13 (D. Md. 1982).
> Further, a third party who is injured by a
> defective product is subject to the same
> statute of limitations (here, four years) as
> the parties to the initial contract. *Frericks
> v. General Motors Corp.*, 278 Md. 304, 315-16,
> 363 A.2d 460 (1976) ("The four-year period of
> limitations in § 2-725 is fully applicable to
> actions by injured third party
> beneficiaries.").

*Brocious v. U.S. Steel Corp.*, 429 F.Supp.3d 82, 89 (D.Md. 2019).

The motions to dismiss as to Count I will be granted.

**B.  Punitive Damages**

In Maryland,

> a plaintiff seeking punitive damages for any
> tort must "allege, in detail, facts that, if
> proven true, would support the conclusion that
> the act complained of was done with actual
> malice." *Scott v. Jenkins*, 345 Md. 21, 690
> A.2d 1000, 1008 (1997).  Here, Plaintiff
> generally alleges that Defendant Brush
> knowingly manufactured and distributed a
> harmful product but does not include specific
> factual allegations to support that charge.
> Such pleading does not satisfy *Scott's*
> requirement of "a high degree of specificity
> from a plaintiff seeking punitive damages."

*Hill v. Brush Engineered Materials, Inc.*, 383 F.Supp.2d 814, 824-25 (D.Md. 2005).  To establish actual malice in products liability cases "'plaintiff must prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or

deliberate disregard of the foreseeable harm resulting from the defect.'" *Id.*, *quoting Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 462 (1992).

Other than the bald accusation that "each corporate defendant" demonstrated "willful and wanton disregard for the safety and welfare of [P]laintiff and his co-workers," Defendants are correct there is no factual support, "let alone specific facts in detail," for Mr. Harris' prayer for punitive damages.   (ECF Nos. 17-1, 20-1, at 8).[3]

While Mr. Harris requests leave to amend if his complaint is partially dismissed, (ECF Nos. 23 and 25, at 5), Dow and BP argue that granting Mr. Harris' leave to amend to add further allegations of actual malice would be futile.   They highlight that the complaint alleges that Defendants failed to provide Mr. Harris with "proper or adequate warnings" and argue that one can infer, therefore, that Defendants did provide some kind of "product warnings and labeling." (ECF Nos. 17-1, at 8-9; 20-1, at 9).   They assert that Maryland law, as explained by Judge Bennett, requires that "a defendant that provided warning labels 'took measures to

---

[3] In his opposition, Mr. Harris attempts to draw an inference of "actual knowledge of the defect and deliberate disregard of the consequences" from the fact that the complaint alleges the chemicals in question are "known human carcinogens" for which the Defendants did not provide him protective gear.   (ECF No. 24, at 4) (quoting *Owens*, 325 Md. at 462).   This inference is hardly clear from the complaint itself, however.

protect its customers,' which is the type of conduct that forecloses a prayer for punitive damages 'as a matter of law.'" (ECF Nos. 17-1 and 20-1 at 9) (citing *Rockman v. Union Carbide Corp.*, No. RDB-16-1169, 2017 WL 2687787, at *7 (D.Md. Jun. 22, 2017)).

This futility analysis fails on two fronts.  When viewed in the light most favorable to Plaintiff, Defendants' inference that an allegation of inadequate warning says anything at all affirmatively about what warnings *were* actually provided on these products is tenuous.  Moreover, Judge Bennett was speaking in *Rockman* on a motion for summary judgment, not a motion to dismiss, as here.  The motion to dismiss as it relates to punitive damages will be granted, but Mr. Harris will be granted leave to amend his original complaint to add specific allegations of actual malice.

## IV.  Conclusion

For the foregoing reasons, the partial motions to dismiss filed by Defendants Dow and BP will be granted.  Count I and the claim for punitive damages will be dismissed.  Jeffrey Harris will be granted leave to amend his original complaint to add specific allegations in support of his prayer for punitive damages.  A separate order will follow.

                                        /s/
                              DEBORAH K. CHASANOW
                              United States District Judge

8